OPINION *Page 2 
{¶ 1} In Stark County Common Pleas Case No. 2005CVO4015, appellant, William Walker, petitioned the Stark County Common Pleas Court for a judgment declaring him to be a wrongfully imprisoned individual pursuant to R.C. § 2743.48. Appellant and Defendant-Appellee, State of Ohio, filed cross-motions for summary judgment.
 {¶ 2} Appellant now appeals from the lower court's decision granting Defendant-Appellee's motion for summary judgment based on the doctrine of invited error.
 STATEMENT OF THE FACTS AND THE CASE {¶ 3} Appellant was indicted by the Stark County Grand Jury on one count of aggravated robbery on September 9, 2002. The bill of particulars alleged that on the night of March 20, 2002, appellant threatened to shoot a Dairy Mart clerk and thereupon took money and three cartons of cigarettes from the store. Appellant pled not guilty and obtained counsel. A jury trial was conducted on October 15, 2002.
 {¶ 4} At trial, the State first called Terry Erb, the Dairy Mart store clerk. According to Erb, he was on duty on March 20, 2002, at about 9:30 P.M., when an African-American man with a goatee wearing a blue hooded sweatshirt entered the store. The man, whom Erb identified at trial as appellant, appeared to be on a "beer run," which Erb defined as the act of a person taking the product from a display area and just walking out the door without paying. Erb called the police, and a report was filed.
 {¶ 5} According to Erb, at about 11:30 P.M., appellant returned to the store. Erb recalled that appellant, who was wearing a sweatshirt and acting like he was armed, *Page 3 
ordered him to open the cash drawer. Erb further testified that appellant also demanded some Newport cigarettes and threateningly asked why Erb had called police about the earlier "beer run." Erb notified the police again after the incident. Erb testified adamantly at trial that the same individual had committed both robberies.
 {¶ 6} In his testimony the clerk was equally adamant that the same individual had committed an earlier theft offense, that being a 12:24 a.m. "beer run" on March 20, 2002. (Testimony of Terrence Erb, Stark County Court of Common Pleas, Case No. 2002-CR-00369, Oct. 16, 2002 at 27-31). During this incident a customer gave Mr. Erb the license number of a vehicle into which the customer saw the suspect enter. The license number was eventually linked to appellant. (Id.).
 {¶ 7} The State next called Canton Police Detective Don King. Detective King had investigated the events at Dairy Mart, and traced the license plate to a "William Walker." King prepared a photo lineup using appellee's BMV picture. About two months after the incidents of March 20, 2002, Erb picked appellant out of the photo lineup, testifying he was "very sure" the perpetrator was appellant.
 {¶ 8} After introducing the store security videotape and the photographic lineup documents, the State rested its case. Appellant chose neither to testify nor call any witnesses on his behalf. Furthermore, no notice of alibi was filed by appellant prior to or at trial. The jury was instructed on the elements of aggravated robbery and the lesser included offense of robbery. The jury thereupon returned a verdict of guilty to the crime of robbery. With appellant's consent, the matter proceeded directly to sentencing. During the court's colloquy, appellant stated the following. *Page 4 
 {¶ 9} "Uh, yeah. There is the chance that-the possibility that I was at the Crisis Center on the 20th. I didn't really have anyone to look into that because I figured that with the tape that would be enough, but it was either the 19th or 20th I was at the Crisis Center. I would ask the Court to look-if we could check into that before sentencing." (T. at 105).
 {¶ 10} Nonetheless, the court proceeded to sentence appellant to a term of three years in prison for robbery.
 {¶ 11} On December 24, 2002, appellant filed a motion for new trial, alleging newly discovered evidence. Appellant therein alleged that he was at a residence on Rem Circle NE in Canton at the time of the robbery.
 {¶ 12} Appellant provided verification that he was at the Crisis Intervention Center of Stark County, 2421 13th Street NW, Canton, OH, from 9:15 p.m. to 9:30 p.m. on the date of the robbery. An intake form completed by social worker Michael Wiandt, confirmed that appellant was at the Crisis Center requesting a detox bed for alcohol/crack. There being no beds available, appellant was advised to come back the following day. Appellant was issued a cab voucher by the Crisis Center. The voucher and invoice showed that appellant was taken to his mother's residence at the Sierra Apartments, 2229 Rem Circle NE, Canton, OH. Appellant's mother's affidavit, averred that he arrived around 10:45 p.m., was in her presence at 11:30 p.m. on the night in question, and remained at her home until approximately 3:00 p.m. the next day. Id. at ¶ 19-20.
 {¶ 13} Following the evidentiary hearing on February 3, 2003, the trial court granted the motion for new trial, journalizing its decision on April 9, 2003. That entry was *Page 5 
subsequently vacated and re-entered on July 17, 2003. The delayed journalization was due to the then pending direct appeal that, until dismissed, precluded the trial court's jurisdiction to grant a new trial.
 {¶ 14} The State obtained leave to appeal the trial court's decision granting appellant a new trial from this Court, and this Court reversed the trial court's decision. See, State v. Walker, 5th
Dist. No. 2003CA00267, 2004-Ohio-3966. This Court concluded the decision to order a new trial, in the face of unequivocal verification in the record that the evidence was not "newly discovered", constituted an abuse of discretion. Id. at ¶ 29. In our decision, dated July 26, 2004, the Court also noted that appellant's claims would be best presented in a petition for post-conviction relief. Id. at ¶ 29.
 {¶ 15} On October 21, 2004, appellant filed a petition for post-conviction relief claiming ineffective assistance of trial counsel for failing to investigate and present the alibi defense. In an entry filed November 23, 2004, the criminal trial court granted post-conviction relief and scheduled the case for further proceedings.
 {¶ 16} In the same Judgment entry, the judge also made the following four findings of fact:
 {¶ 17} That prior counsel was aware of this alibi defense and information from the first time that he met the Defendant/Petitioner but failed to conduct a further investigation and/or to plead and provide such alibi defense at trial;
 {¶ 18} That the evidentiary documents submitted herein contemporaneously with this Petition provide sufficient, operative facts to demonstrate that counsel failed in his duty and that the Defendant/Petitioner was prejudiced by counsel's ineffectiveness; *Page 6 
 {¶ 19} A presentation of this alibi defense and evidence would by clear and convincing evidence create a circumstance where no reasonable fact finder could have found the Defendant/Petitioner guilty of the offense for which he was convicted; and
 {¶ 20} . . . that Petitioner has shown by clear and convincing evidence that, but for the constitutional error at trial, no reasonable fact finder would have found the Petitioner guilty of the offense for which the Petitioner was convicted.
 {¶ 21} At a bench trial on February 15, 2005, appellant presented his alibi defense and was acquitted of the robbery offense. (See, Defendant's Motion for Summary Judgment Ex. D, Second Trial Transcript). The alibi evidence included testimony from Pam Taylor, custodian of records, relating to the non-admit slip from the Crisis Intervention Center of Stark County demonstrating appellant was at the facility from 9:15 p.m. until 9:30 p.m. on March 20, 2002.(See, Defendant's Motion for Summary Judgment Ex. D, Transcript at pp. 27-29; see also, Defendant's Motion for Summary Judgment Ex. E, Non-Admit Slip). This evidence established appellant's whereabouts at 9:30 p.m., the time of the second "beer run" which had occurred on March 20, 2002.
 {¶ 22} A treatment counselor, Michael Wiandt, testified that he issued appellant a voucher for a private transportation company because no bed was available in the detox program. (See, Defendant's Motion for Summary Judgment Ex. D, Transcript at pp. 30-39; see also, Defendant's Motion for Summary Judgment Ex. F, Transportation Voucher). The treatment counselor could not identify appellant as the person who actually appeared at the Crisis Center on the night in question. (See, Defendant's Motion for Summary Judgment Ex. D, Transcript at pp. 32 36). *Page 7 
 {¶ 23} Joanne Gearhart, a representative from C D Transportation, testified that appellant, along with another passenger, had been picked up at 10:30 p.m. on the night in question. (See, Defendant's Motion for Summary Judgment Ex. D, Transcript at pp. 39-45). According to a company invoice, the other passenger was taken to Aultman Hospital and appellant was taken to his mother's Rem Circle address. (See, Defendant's Motion for Summary Judgment Ex. G, Invoice C D Inc.).
 {¶ 24} Appellant's mother reasserted the truth of her affidavit wherein she averred that he stayed at her apartment on Rem Circle from approximately 10:45 p.m. until 3:00 p.m. the following day. Although the mother's testimony lacked independent corroboration, it spoke to appellant's whereabouts at 11:30 p.m. on March 20, 2002, the time of the Dairy Mart robbery. (See, Defendant's Motion for Summary Judgment Ex. D, Transcript at pp. 24-26; see also, Defendant's Motion for Summary Judgment Ex. H, Affidavit of Carol Howell).
 {¶ 25} Appellant's whereabouts two hours earlier, at the time of the "beer run", becomes relevant in light of Terry Erb's testimony that these incidents were committed by the same man. (See, Defendant's Motion for Summary Judgment Ex. D, Transcript at pp. 8-21). Upon conclusion of the evidence, the trial judge found appellant not guilty. (See, Defendant's Motion for Summary Judgment Ex. D, Transcript at p. 51).
 {¶ 26} The conviction and sentence resulting from the first trial in Stark County Court of Common Pleas, Case Number 2002CR1094 give rise to Walker's statutory claim of wrongful imprisonment. Appellant was sentenced on October 16, 2002, immediately following the jury verdict in the first trial. However, a review of the trial court docket in case number 2002CR1094 reflects that as of May 13, 2003 appellant was *Page 8 
permitted to be free on his own recognizance pending appeal from the decision granting a new trial, the filing of his petition for post-conviction relief, and the retrial of his case. (See, Defendant's Motion for Summary Judgment Ex. A, Docket). This would account for approximately seven months incarceration excluding pretrial detention in the Stark County jail.
 {¶ 27} On November 17, 2005, Walker filed the underlying Complaint for Declaratory Judgment pursuant to R.C. 2743.48, the wrongful imprisonment statute. On December 11, 2006, following the completion of discovery, the parties filed cross motions for summary judgment. The State of Ohio also filed an appendix of exhibits in support of its motion for summary judgment. Opposition and reply briefs were filed by the parties.
 {¶ 28} The State of Ohio presented three arguments in support of summary judgment. First, the State of Ohio argued that appellant cannot prove by a preponderance of the evidence that he was not engaged in any other criminal conduct at the time of the incident for which he was initially charged. (Defendant's Motion for Summary Judgment at pp. 12-16). Second, the State of Ohio argued that appellant was otherwise incarcerated pursuant to the revocation of community control in Stark County Court of Common Pleas, Case Number 2002CR0741. (Defendant's Motion for Summary Judgment at pp. 16-19). Third, the State of Ohio argued that appellant invited the error that resulted in his conviction being overturned and should not be permitted to benefit from the statutory remedy for wrongful imprisonment. (Defendant's Motion for Summary Judgment at pp. 19-20). *Page 9 
 {¶ 29} On February 7, 2007, the court below concluded that appellant's claim of wrongful imprisonment was barred by the doctrine of invited error and granted summary judgment in favor of the State of Ohio. Having reached this conclusion, the court below did not find it necessary to render a decision with regard to the State of Ohio's two other arguments.
 {¶ 30} It is from the trial court's February 7, 2007 Judgment Entry granting the State of Ohio's Motion for Summary Judgment that appellant has timely appealed raising the following two assignments of error:
 {¶ 31} "I. THE TRIAL COURT ERRED, AS A MATTER OF LAW, IN APPLYING THE INVITED ERROR DOCTRINE TO SUMMARILY DISMISS APPELLANT'S CLAIM THAT HE IS A "WRONGFULLY IMPRISONED INDIVIDUAL" UNDER R.C. § 2743.48.
 {¶ 32} "II. THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT TO APPELLANT DESPITE THE EXISTENCE OF A GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER APPELLANT INVITED ANY ERROR THAT CAUSED HIS CONVICTION AND WRONGFUL IMPRISONMENT."
 Summary Judgment Standard {¶ 33} Our standard of review following the entry of summary judgment is de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. We stand in the shoes of the trial court and conduct an independent review of the record. As such, we must affirm the trial court's judgment if any of the grounds raised by the movant at the trial court is found to support it, even if the trial court failed to consider those grounds. See Dresher, supra; Coventry Twp. v. Ecker (1995), 101 Ohio App.3d 38,41-42, 654 N.E.2d 1327. A reviewing court is not authorized to reverse a correct judgment merely *Page 10 
because it was reached for the wrong reason. State v. Lozier (2004),101 Ohio St.3d 161, 166, 2004-Ohio-732 at ¶ 46, 803 N.E.2d 770, 775. [Citing State ex rel. McGinty v. Cleveland City School Dist. Bd. of Edn. (1998),81 Ohio St.3d 283, 290, 690 N.E.2d 1273]; Helvering v. Gowranus (1937),302 U.S. 238, 245, 58 S.Ct. 154, 158.
 {¶ 34} Summary judgment is appropriate only where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. Tokles Son, Inc. v. Midwestern Indemn. Co. (1992),65 Ohio St.3d 621, 629, 605 N.E.2d 936, citing Harless v. Willis Day WarehousingCo. (1978), 54 Ohio St.2d 64, 65-66, 375 N.E.2d 46.
 {¶ 35} The party seeking summary judgment initially bears the burden of informing the trial court of the basis for the motion and identifying portions of the record demonstrating an absence of genuine issues of material fact as to the essential elements of the nonmoving party's claims. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. The moving party may not fulfill its initial burden simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Id. Rather, the moving party must support its motion by pointing to some evidence of the type set forth in Civ.R. 56(C), which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. Id. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. Id. However, once the moving party satisfies its initial burden, the nonmoving party bears the burden of offering specific facts showing that there is a genuine issue for trial. Id. The *Page 11 
nonmoving party may not rest upon the mere allegations and denials in the pleadings, but, instead, must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact. Civ.R. 56(E); Henkle v. Henkle (1991), 75 Ohio App.3d 732, 735,600 N.E.2d 791.
 {¶ 36} It is based upon this standard that we review appellant's assignments of error.
 I. II. {¶ 37} In his first assignment of error appellant argues the trial court erred as a matter of law in applying the doctrine of "invited error;" in his second assignment of error appellant argues that because genuine issues of material fact are in dispute, the trial court erred in granting the State of Ohio's motion for summary judgment. We shall address these assignments of error together.
 {¶ 38} The Supreme Court of Ohio has summarized the process involved in bringing a statutory cause of action for wrongful imprisonment as follows:
 {¶ 39} "The Ohio Revised Code provides a two-step process whereby a person claiming wrongful imprisonment may sue the State of Ohio for damages incurred due to the alleged wrongful imprisonment. * * * The first action, in the common pleas court under R.C. 2305.02, seeks a preliminary factual determination of wrongful imprisonment; the second action, in the Court of Claims under R.C. 2743.48, provides for damages. Prior to filing suit in the Court of Claims for damages, a petitioner must establish the following: (1) the petitioner was convicted of a felony; (2) the petitioner was sentenced for that conviction; (3) the conviction was vacated, dismissed, or reversed; (4) no further prosecution was attempted or allowed for that conviction or any act *Page 12 
associated with that conviction; and (5) the offense of which the petitioner was found guilty was not committed by the petitioner or was not committed at all. * * * The petitioner carries the burden of proof in affirmatively establishing his or her innocence under R.C. 2743.48(A) (5). If the common pleas court makes such a finding, then the petitioner may file a civil suit for money damages against the state. * * * The claim must be commenced in the Court of Claims within two years of the common pleas court's determination that the petitioner had been wrongfully incarcerated." (Citations omitted.) State ex rel. Tubbs Jonesv. Suster (1998), 84 Ohio St.3d 70, 72, 701 N.E.2d 1002.
 {¶ 40} A de novo determination of innocence is prerequisite to a declaration of status as a wrongfully imprisoned individual.Chandler v. State (1994), 95 Ohio App.3d 142, 149, 641 N.E.2d 1382. See, also, Walden v. State (1989), 47 Ohio St.3d 47, 52, 547 N.E.2d 962. "[A] verdict or judgment of acquittal in a criminal trial is a determination that the state has not met its burden of proof on the essential elements of the crime. It is not necessarily a finding that the accused is innocent." Walden, supra, at 52, 547 N.E.2d 962. Consequently, a judgment of acquittal subsequent to conviction is not determinative of innocence on a petition under R.C. 2743.48(A). See Id. at paragraph two of the syllabus. The petitioner carries the burden of proof in affirmatively establishing his innocence under R.C. 2743.48(A) (5).Walden, supra, at paragraph three of the syllabus.
 {¶ 41} Because a judgment of acquittal is not to be given controlling effect in a proceeding under R.C. 2305.02 and 2743.48(A), "the very same transcript of a criminal proceeding which results in a conviction and which is subsequently overturned on the weight or sufficiency of the evidence may nonetheless be insufficient to support a *Page 13 
claimant's innocence by a preponderance of the evidence." Chandler v.State (1994), 95 Ohio App.3d 142, 149, 641 N.E.2d 1382, 1386. A petitioner seeking compensation for wrongful imprisonment must prove that, at the time of the incident for which he was charged, he was not engaging in any criminal conduct arising out of the incident. Gover v.State (1993), 67 Ohio St.3d 93, 616 N.E.2d 207, syllabus.
 {¶ 42} When reviewing a trial court's ruling on a claimant's failure to demonstrate by a preponderance of the evidence that he qualifies as a wrongfully imprisoned individual, our function is to review the record to determine if the trial court's judgment is supported by competent, credible evidence going to all the essential elements of the case.Ratcliff v. State (1994), 94 Ohio App.3d 179, 182, 640 N.E.2d 560, 562. As to facts, we are to defer to the trial court that was in the best position to view the witnesses, observe their demeanor, gestures, and voice inflections, and use these observations in weighing credibility.Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1273.
 {¶ 43} In the case at bar, both the State and the appellant filed motions for summary judgment in the trial court. Each party submitted evidentiary materials in support of their respective motions.
 {¶ 44} In moving for summary judgment, the State of Ohio must point to some evidence that affirmatively demonstrates that appellant has no evidence to support his claim. Henderson v. State, 11th
Dist. No. 2006-T-0033, 2007-Ohio-208 at ¶ 34. In response, appellant must set forth sufficient facts to demonstrate that there is a triable issue. Id. Likewise, appellant's motion for summary judgment must point to some evidence that affirmatively demonstrates that there is no evidence to deny his claim for *Page 14 
wrongful imprisonment. Id. at ¶ 35. Then, the State of Ohio is required to respond by setting forth sufficient facts to demonstrate that there is a triable issue. Id. at ¶ 35.
 {¶ 45} The State's motion for summary judgment argued that: "(1). the[appellant] cannot prove by preponderance of the evidence that he was not engaged in any other criminal conduct at the time of the incident for which he was initially charged in Stark County case number 2002CR1094, thereby failing to satisfy R.C. 2743.48(A)(4) . . . (2) the [State of Ohio] has established that the [appellant] was otherwise incarcerated pursuant to the revocation of community control in Stark County case number 2002CR0741; and (3) that the [appellant] invited the error that resulted in his conviction being overturned and should not be able to benefit from the statutory remedy set forth in R.C. 2743.48." [Judgment Entry Granting Defendant's Motion for Summary Judgment, filed Feb. 7, 2007 at 5-6]. [Citations omitted].
 {¶ 46} The trial court reviewed the evidence submitted by both parties. [Id. at 1-3; 6-7]. The trial court granted the State of Ohio's motion for summary judgment stating: "[i]n applying the invited error doctrine to the facts of the instant case, the Court finds that it was the affirmative action of the [appellant] in deciding not to introduce an alibi defense at trial, which led to his conviction. There was no action taken by the State of Ohio, i.e. the State of Ohio was unaware of any alibi defense, which resulted in the [appellant] receiving a new trial and being found not guilty. Therefore, the Court finds that the State of Ohio should not be liable under R.C. 2743.48 for the invited error of the [appellant]." [Id. at 7]. The trial court found it unnecessary to address the other grounds that the State of Ohio argued in support of its motion for summary judgment. [Id. at 8]. *Page 15 
 {¶ 47} In this appeal, appellant argues that the trial court erred in applying the invited error doctrine to defeat his claim that he is a wrongfully imprisoned individual. Appellant first argues that the invited error doctrine may not be applied to an individual who has been denied his or her Sixth Amendment right to the effective assistance of trial counsel in the criminal proceeding upon which the claim of wrongful imprisonment is based.
 {¶ 48} Under the doctrine of "invited error," it is well-settled that "a party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make." State ex rel. Smithv. O'Connor (1995), 71 Ohio St.3d 660, 663, citing State ex rel. Fowlerv. Smith (1994), 68 Ohio St.3d 357, 359. See, also, Lester v. Leuck
(1943), 142 Ohio St. 91, paragraph one of the syllabus. As the Ohio Supreme Court has stated:
 {¶ 49} "The law imposes upon every litigant the duty of vigilance in the trial of a case, and even where the trial court commits an error to his prejudice, he is required then and there to challenge the attention of the court to that error, by excepting thereto, and upon failure of the court to correct the same to cause his exceptions to be noted. It follows, therefore, that, for much graver reasons, a litigant cannot be permitted, either intentionally or unintentionally, to induce or mislead a court into the commission of an error and then procure a reversal of the judgment for an error for which he was actively responsible".Lester at 92-93, quoting State v. Kollar (1915), 142 Ohio St. 89, 91. However, the Courts have not used this doctrine to deny a defendant in a criminal case relief from prejudicial error that occurred during the trial. *Page 16 
 {¶ 50} In State v. DeLon (May 25, 2001), 2nd Dist. No. 18114, DeLon argued that the trial court erred in allowing the prosecutor to question him about a handgun that was found next to him on the seat of his car on the day of his arrest, despite the fact that prior to trial, the trial court had ruled that any evidence regarding the handgun would be excluded at trial absent some action by the defense that would "open the door" on that issue. The trial court permitted the questioning after finding that DeLon had opened the door on the issue with his response to a previous question asked by the prosecutor. The Court of Appeals for the Second District concluded that the trial court erred when it found that DeLon had opened the door to questioning about the handgun; to the contrary, it was the prosecutor who elicited testimony about the handgun while cross-examining DeLon, who was duty-bound to answer the prosecutor's questions truthfully. The Court of Appeals, however, concluded that defense counsel "invited" the trial court's error by conceding, erroneously, during a sidebar conference that the defense had opened the door to further questioning about the handgun. However, the Court of Appeals went on to state: "[t]he remaining question before us, then, is whether defense counsel's actions amounted to constitutionally ineffective assistance of counsel."
 {¶ 51} In reviewing a claim on appeal that a jury instruction requested by the defendant and given by the trial court was reversable error, the Supreme Court of Washington held that under the "invited error doctrine," a party may not request a jury instruction and then later complain on appeal that requested instruction was given. State v.Gentry (1995), 125 Wash.2d 570, 646-647, 880 P.2d 1105, 1150. However, the Court further held that the doctrine of invited error did not preclude the Court from reviewing the error in connection with an ineffectiveness of counsel argument. Id. The *Page 17 
Court reasoned that "this will ensure that any error which was indeed prejudicial could be grounds for reversal. The additional factor of actual prejudice required for a successful ineffectiveness of counsel claim will in turn insure that the issue is of serious dimension." Id. at 647, 880 P.2d at 1150.
 {¶ 52} The Supreme Court of California has taken a similar position explaining that a claim that a tactical choice made by trial counsel was uninformed or otherwise incompetent must be treated as one of ineffective assistance of counsel, not as a reason for not applying the invited error doctrine. The Court reasoned that a deliberate tactic by counsel can be an incompetent one and thus, a defendant who is barred from raising instructional error by the invited error doctrine may assert ineffectiveness of counsel if prejudiced. People v. Cooper
(1991), 53 Cal.3d 771, 832, 809 P.2d 865, 900.
 {¶ 53} In the case at bar, in granting appellant's petition for post-conviction relief the judge found that appellant was prejudiced by assigned counsel's failure to pursue an alibi defense at trial.[State v. Walker, Stark County Court of Common Pleas, case No. 2002CR1094, Judgment Entry filed Nov. 23, 2004.]. The trial court reviewed the alleged error as an ineffectiveness of counsel claim, not as a claim of "invited error." As noted above, a finding that appellant, either intentionally or unintentionally, induced or mislead the court into the commission of the error is not inconsistent with the finding that counsel was ineffective in failing to present an alibi defense at appellant's initial jury trial. Appellant's remedy for the prejudicial effect of the failure to present an alibi defense was the trial court's granting of a new trial with new counsel representing the appellant. The trial court in the post-conviction relief proceeding could find both that *Page 19 
appellant invited the error but appellant was prejudiced by the failure of counsel to present the alibi defense.
 {¶ 54} As further noted above, the focus in a wrongful imprisonment case is whether or not the petitioner carries the burden of proof in affirmatively establishing his innocence under R.C. 2743.48(A) (5).Walden, supra, at paragraph three of the syllabus. The central issue in the case before us is whether the appellant's participation and agreement not to present the alibi defense should bar his action for wrongful imprisonment. The argument is that, if the alibi evidence was presented during appellant's first trial, and if the appellant was then acquitted, he would have no cause of action for wrongful imprisonment. In other words, appellant's own actions created the situation that resulted in his imprisonment.
 {¶ 55} Inadequate legal assistance guaranteed by the Sixth Amendment constitutes an unconstitutional deprivation of defendant's liberty.Cuyler v. Sullivan (1980), 446 U.S. 335, 100 S.Ct. 1708. Accordingly, the alleged failure of retained, or court appointed counsel, to render effective assistance involves state action which can support a claim for wrongful imprisonment. Id. In the case at bar, it is apparent from a review of the record that appellant was relying upon the advice of counsel in making his decision not to present the alibi defense during his first jury trial in the underlying criminal case. As previously noted, the trial court in appellant's post conviction relief proceeding found that counsel's decision fell below an objective standard of reasonable representation and violated counsel's essential duties to the client. Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052,80 L.Ed.2d 674; State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373. The trial court further found that the *Page 19 
defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial was suspect. Id. Accordingly, counsel did not provide the defendant with reasonably competent advice. The vital guarantee of the Sixth Amendment would stand for little if the decision to rely upon the advice of counsel to pursue a particular strategy or defense at trial could reduce or forfeit the defendant's entitlement to constitutional protection. See, Cuyler v.Sullivan, 446 U.S. 344, 100 S.Ct. 1716. "Except in topsy-turvy land, you can't die before you are conceived, or be divorced before ever you marry, or harvest a crop never planted, or burn down a house never built, or miss a train running on a non-existent railroad . . ."Shover v. Cordis Corp. (1991), 61 Ohio St. 3d 213, 233 (Douglas, J., dissenting). (Quoting Dincher v. Marlin Firearms Co. (C.A. 2 1952), 198 F. 2d 821,823). Here, appellant was granted a new trial due to the ineffectiveness of his original trial counsel. Only in topsy-turvy land can you receive a new trial due to counsel's incompetent advice and then be barred from pursing a claim for wrongful imprisonment because you relied to your detriment on counsel's decision. This is not a case where, for example, the defendant insisted, against the advice of counsel, upon not presenting the alibi in order to protect the potential alibi witness, or to prevent other damaging testimony from being exposed. We see no legitimate reason to divest a person from his or her right to pursue a claim for wrongful imprisonment simply because the person relied upon the incompetent advice of his or her attorney.
 {¶ 56} However, as previously noted, a reviewing court is not authorized to reverse a correct judgment merely because it was reached for the wrong reason. State v. Lozier (2004), 101 Ohio St.3d 161, 166,2004-Ohio-732 at ¶ 46, 803 N.E.2d 770, 775. *Page 20 
[Citing State ex rel. McGinty v. Cleveland City School Dist. Bd. ofEdn. (1998), 81 Ohio St.3d 283, 290, 690 N.E.2d 1273]; Helvering v.Gowranus (1937), 302 U.S. 238, 245, 58 S.Ct. 154, 158.
 {¶ 57} A de novo determination of innocence is prerequisite to a declaration of status as a wrongfully imprisoned individual.Chandler v. State (1994), 95 Ohio App.3d 142, 149, 641 N.E.2d 1382. See, also, Walden v. State (1989), 47 Ohio St.3d 47, 52, 547 N.E.2d 962. ["As a general rule, a verdict or judgment of acquittal in a criminal trial is a determination that the State has not met its burden of proof on the essential elements of the crime. It is not necessarily a finding that the accused is innocent . . . This is why the General Assembly intended in R.C. 2305.02 and 2743.48(A)(4) that a claimant must first affirmatively prove her innocence by a preponderance of the evidence".]47 Ohio St.3d 47, 51-52, 547 N.E.2d 962.(Citations omitted).
 {¶ 58} In the case at bar the importance of the alibi evidence only came into play because the store clerk was positive that the same individual committed the theft at 9:30 p.m. and the robbery at 11:30 p.m. (Testimony of Richard Drake, Esq., Feb. 3, 2003, Stark County Court of Common Pleas case No. 2002CR1094 at 17-22). In support of its motion for summary judgment, the State also submitted the trial testimony of the store clerk. In his testimony the clerk is equally adamant that the same individual had committed an earlier theft offense, that being the 12:24 a.m. "beer run" on March 20, 2002. (Testimony of Terrence Erb, Stark County Court of Common Pleas, Case No. 2002-CR-00369, Oct. 16, 2002 at 27-31). During this incident a customer gave Mr. Erb the license number which was eventually linked to appellant. (Id.). In his statement given to trial counsel's investigator, appellant recounts a story about the theft of beer *Page 21 
involving his friend "Akeem". (Walker v. Drake, Stark County Court of Common Pleas Case No. 2005CV03997, Defendant's Motion for Summary Judgment filed May 2, 2006 at Exhibit 11). Appellant described his friend as being dark skinned and wearing a hooded jacket. While driving a vehicle that matches the description obtained following the 12:24 a.m. incident, appellant admits that he and Akeem went to the same neighborhood as the Dairy Mart store in search of "dope." While appellant waited in his car, Akeem was supposed to go and get the dope, but when Akeem returned to the vehicle he had beer. Akeem was out of breath and told appellant to turn around and go the other way. Appellant "figured" the beer was stolen and someone must have gotten his license plate number.
 {¶ 59} Appellant cannot have it both ways. He cannot introduce alibi evidence for the 9:30 p.m. incident and argue that evidence that a vehicle registered to appellant was potentially involved in the 12:24 a.m. incident is not relevant or related to the events occurring at approximately 11:30 p.m.
 {¶ 60} We do not weigh the quantity or the quality of the evidence offered by the State of Ohio, but we do conclude that there is some evidence putting in doubt the innocence of appellant.
 {¶ 61} In support of his motion for summary judgment, appellant presented his alibi evidence. The testimony and the exhibits from the Crisis Center and the transportation company tend to show appellant was at the Crisis Center at the time of the 9:30 p.m. incident. The testimony of appellant's mother, if believed, would tend to indicate that he was at her residence at the time of the 11:30 p.m. incident. *Page 22 
 {¶ 62} Without weighing the quantity or the quality of appellant's evidence offered in support of his motion for summary judgment, we are not able to say that the evidence offered constitutes no evidence of innocence. In fact, some, though not all of the evidence, is probative of innocence, and some is not. A trier of fact could base a judgment of innocence on appellant's alibi evidence as well as some evidence that casts doubt on the store clerk's assertion that it was the same individual who committed all the offenses. As a matter of law, this matter cannot be resolved by way of summary judgment on behalf of either party.
 {¶ 63} In sum, the finder of fact must determine at a trial on the merits whether appellant will carry his burden of proof to establish his innocence. *Page 23 
 {¶ 64} Our analysis and discussion demonstrates that there are triable issues, and summary judgment should not have been entered for either party.
 {¶ 65} The judgment of the Stark County Court of Common Pleas is reversed, and this matter is remanded to the trial court for further proceedings consistent with this opinion.
 Gwin, P.J., Hoffman, J., and Delaney, J., concur *Page 24 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas is reversed, and this matter is remanded to the trial court for further proceedings consistent with this opinion. Costs to appellee. *Page 1