[Cite as *State v. Brown*, **2013-Ohio-3608**.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff - Appellee | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. Craig R. Baldwin, J. |
| | : | |
| -vs- | : | |
| | : | |
| RARECOLE L.E. BROWN | : | Case No. CT2013-0004 |
| | : | |
| | : | |
| Defendant - Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:   Appeal from the Muskingum County
Court of Common Pleas, Case No.
CR2012-0146


JUDGMENT:   Affirmed in part, Reversed in part,
Remanded


DATE OF JUDGMENT:   August 20, 2013


APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

ROBERT L. SMITH                          DAVID A. SAMS
Assistant Prosecuting Attorney           Box 40
27 North Fifth Street                    West Jefferson, OH 43162
Zanesville, OH 43701

*Baldwin, J.*

{¶1}    Appellant Rarecole L.E. Brown appeals a judgment of the Muskingum County Common Pleas Court convicting him of felonious assault (R.C. 2903.11(A)(2)) with a firearm specification (R.C. 2941.145) and having a weapon under disability (R.C. 2923.13(A)(3)).  Appellee is the State of Ohio.

STATEMENT OF FACTS AND CASE

{¶2}    On June 1, 2012, Justin Minor was living with a friend in Zanesville, Ohio, whom he knew only by his first name of George.  Minor made a living selling drugs, specifically heroin and crack.  He knew George from dealing drugs, and had been living with George and a man named "T" for about four days.  Justin's brother Samson had lived in the house at one time, and had installed a camera system in the house.  Justin paid rent to George in drugs rather than cash.

{¶3}    During the evening of June 1, 2012, Minor was hanging out at the house with George, T, and appellant, who Minor had known for years.  Minor was selling drugs, and ran out of heroin.  Because no one among the group at the house had a valid driver's license, Minor called a customer named Nick Large to drive appellant to Columbus to get more heroin, as well as some crack cocaine.  Minor sent $2200 with them for two ounces of heroin, and another $200 for crack.  Minor stayed at the house with T and George, as well as his girlfriend Keree and a woman named Lisa.

{¶4}    On the camera system, Minor saw appellant return from Columbus.  When Minor asked appellant for the crack, appellant would not give him the drugs.  Initially the crack was to be split evenly between Nick Large and Minor, but appellant now wanted

some of the crack for his trouble in making the trip to Columbus. Minor agreed to give appellant half of his share.

{¶5} Appellant used a scale in the kitchen to weigh the crack. However, Minor noticed that appellant was taking the larger pieces for himself and giving Minor the crumbs. The two of them argued, and appellant pulled out a gun and shot Minor in the abdomen. Appellant began pacing back and forth, saying, "Look what you made me do." Minor told appellant to get out of there and appellant took off running.

{¶6} Nick Large called 911 during the early morning hours of June 2, 2012, and reported the incident as a drive-by shooting. Police arrived and found Minor lying on the porch, wounded. Police found a hat and a gun about a block away from the shooting.

{¶7} Appellant called Minor while Minor was recuperating in the hospital, and again after he was released from the hospital. Appellant asked Minor to "keep it in the streets," and Minor responded that he would "stick to the script."

{¶8} Police interviewed appellant concerning the shooting. He claimed that he was not in Zanesville on the day of question.

{¶9} Appellant was charged with attempted murder, felonious assault and having a weapon under a disability. The case proceeded to jury trial in the Muskingum County Common Pleas Court.

{¶10} At trial, appellant admitted that he traveled to Columbus with Nick Large to pick up drugs for Minor. He testified that he went into the bathroom after returning, and when he came out Minor said, "Where the fuck is my shit?" Tr. 436. Appellant testified that he told Minor he gave it to him, and Minor replied, "No, man, my shit short." Minor

accused appellant of stiffing him, and the two argued. Minor then pulled out a gun. When appellant tried to take the gun from Minor, the gun went off. He testified that he lied to police earlier because he was on probation and being around Minor, a convicted felon, would send him back to prison. He also testified that he lied to police because he never thought Minor would implicate him as the shooter.

{¶11} Appellant was acquitted of attempted murder, but convicted of felonious assault with the firearm specification and having a weapon under disability. He was sentenced to eight years incarceration for felonious assault, three years incarceration for the firearm specification, and five years incarceration for having a weapon under disability. The five year sentence was to be served concurrently with the eight year sentence, for an aggregate term of eleven years incarceration. Appellant assigns the following errors on appeal:

{¶12} "I. DEFENDANT-APPELLANT WAS PREJUDICED BY THE INTRODUCTION OF UNRELIABLE AND INADMISSIBLE DNA EVIDENCE CONTRARY TO OHIO LAW AND THE STATE AND FEDERAL CONSTITUTIONS.

{¶13} "II. DEFENDANT-APPELLANT WAS PREJUDICED BY THE DENIAL OF HIS RIGHT TO CONFRONT HIS ACCUSER AND TO PRESENT A DEFENSE CONTRARY TO OHIO LAW AND THE STATE AND FEDERAL CONSTITUTIONS.

{¶14} "III. DEFENDANT-APPELLANT WAS DENIED A FAIR TRIAL BY PROSECUTORIAL MISCONDUCT CONTRARY TO OHIO LAW AND THE STATE AND FEDERAL CONSTITUTIONS.

{¶15} "IV. DEFENDANT-APPELLANT WAS PREJUDICED BY THE FAILURE OF THE TRIAL COURT TO GIVE PROPER JURY INSTRUCTIONS, WHICH ERROR

FORECLOSED HIS DEFENSES OF ACCIDENT AND NECESSITY, AND BY THOSE ATTRIBUTING TO HIM AN AFFIRMATIVE DEFENSE OF SELF-DEFENSE, WHICH HE HAD NOT RAISED, CONTRARY TO OHIO LAW AND THE STATE AND FEDERAL CONSTITUTIONS.

{¶16} "V. DEFENDANT-APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL CONTRARY TO THE STATE AND FEDERAL CONSTITUTIONS.

{¶17} "VI. DEFENDANT-APPELLANT WAS PREJUDICED WHEN HE WAS SENTENCED TO A TERM OF 5 YEARS IMPRISONMENT FOR AN F-3 WEAPONS UNDER DISABILITY (WUD) WHEN AN F-3 WUD CARRIES A MAXIMUM TERM OF ONLY 36 MONTHS UNDER R.C. 2929.14(A)(3)(a-b) CONTRARY TO OHIO LAW AND THE STATE AND FEDERAL CONSTITUTIONS.

{¶18} "VII. DEFENDANT-APPELLANT WAS PREJUDICED BY CUMULATIVE ERROR CONTRARY TO OHIO LAW AND THE STATE AND FEDERAL CONSTITUTIONS."

I.

{¶19} In his first assignment of error, appellant argues the court erred in admitting evidence that he could not be excluded as a contributor to the DNA found on the gun. He argues that there "was no direct evidence from which to conclude that appellant's lack of exclusion was the result of anything more than his inclusion in a world human population of 7 billion-plus who likewise could not be excluded."

{¶20} Raymond Peoples, a forensic scientist in the DNA section of the Bureau of Criminal Identification and Investigation, testified that DNA from the gun trigger showed

a mixture of three individuals, but the profile was not suitable for inclusionary purposes and no conclusion could be made as to whether appellant contributed to the mixture. He also testified that at times someone who is not suitable for inclusion might be excluded, but in the instant case he could not exclude appellant from the mixture. He testified similarly as to a DNA profile taken from elsewhere on the gun. Appellant did not object to this testimony.

{¶21} Because appellant failed to object, we must find plain error in order to reverse. To prevail under a plain error analysis, appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978). Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.* at paragraph three of the syllabus.

{¶22} Appellant has not demonstrated that the outcome of the trial would have been different but for this testimony. The witness clearly stated that no conclusions could be made regarding appellant as a possible contributor to the mixture of DNA on the gun. Contra to appellant's argument, the testimony did not create an inference that appellant handled the weapon. Further, appellant admitted in his testimony that he touched the weapon, as he was trying to get the gun away from Minor when it fired, and three witnesses testified that they saw appellant holding the gun.

{¶23} The first assignment of error is overruled.

II.

{¶24}   In his second assignment of error, appellant argues that the court erred in excluding a tape recorded statement of Minor in which he conceded appellant's accident defense.

{¶25}   During Minor's testimony, counsel for appellant asked him:

{¶26}   "Q.  That is more than one.  Here's what I'm asking you.  Did you tell Mr. Brown, and I quote, I know you didn't do nothing, man?

{¶27}   "A.  I can't recall."  Tr. 264.

{¶28}   Counsel then requested a sidebar conference.  At sidebar, he represented to the court that he had a tape recording of a call in which Minor said, "I know you didn't do nothing, man."  The court found that Minor's testimony that he didn't recall making the statement was not inconsistent with making the statement, and the tape was inadmissible.

{¶29}   The admission or exclusion of evidence lies within the sound discretion of the trial court. *State v. Sage* , 31 Ohio St.3d 173, 510 N.E.2d 343 (1987).  Crim. R. 52(A), governing harmless error, states that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."

{¶30}   In the instant case, exclusion of the tape-recorded statement was harmless as it did not affect appellant's substantial rights.  Minor testified that when talking to appellant on the telephone, he had agreed to "stick to the script" in an effort to conceal his true intentions with regard to prosecution of the case.  The specific statement which counsel represented to be on the tape was not materially different from

Minor's prior testimony and appellant cannot demonstrate that its exclusion affected a substantial right.  Any error in exclusion of the tape was harmless.

{¶31}   The second assignment of error is overruled.

III.

{¶32}   In his third assignment of error, appellant argues that the prosecutor committed misconduct.

{¶33}   The test for prosecutorial misconduct is whether the prosecutor's comments and remarks were improper and if so, whether those comments and remarks prejudicially affected the substantial rights of the accused. *State v. Lott,* 51 Ohio St.3d 160, 555 N.E.2d 293 (1990). In reviewing allegations of prosecutorial misconduct, it is our duty to consider the complained of conduct in the context of the entire trial. *Darden v. Wainwright,* 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986).

{¶34}   Appellant first argues that the prosecutor crossed the line by presenting inadmissible "reverse inference" DNA evidence as outlined in the first assignment of error.  For the reasons stated in the first assignment of error, appellant's claim is without merit.

{¶35}   Appellant next argues that the prosecutor committed misconduct by improperly questioning appellant on his failure to testify at the preliminary hearing and by commenting on the same in closing argument.

{¶36}   The United States Supreme Court has held that "the Fifth Amendment, in its direct application to the Federal Government and in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence or instructions by the court that silence is evidence of guilt." *Griffin v.*

*California*, 380 U.S. 609, 615,85 S.C.t 1229, 14 L.E.2d 106 (1965). Judicial or prosecutorial commentary concerning the accused's Fifth Amendment privilege against self-incrimination does not constitute a constitutional violation unless the comments are intended to imply that the accused's silence is evidence of guilt. *Lakeside v. Oregon*, 435 U.S. 333, 338-39, 98 S.Ct. 1091, 1093, 55 L.Ed.2d 319 (1978).

{¶37} Appellant told police that he was not in Zanesville on the day of the shooting. However, at trial he admitted he was in Zanesville but testified Minor pulled the gun on him, and he shot Minor while trying to get the gun away from him. While cross-examining appellant as to why he failed to take advantage of opportunities to correct his statement to police prior to trial, the prosecutor asked appellant if he was in attendance at his preliminary hearing on June 14th, and noted that several people testified at this hearing. The prosecutor continued:

{¶38} "Q. That would have been an opportunity to set the record straight, wouldn't it?

{¶39} "A. Yes, it would have.

{¶40} "Q. But you didn't testify, did you?

{¶41} "A. Hold on. At that time –

{¶42} "MR. KAIDO: Objection. Your Honor, he doesn't have to testify at the preliminary hearing.

{¶43} "THE COURT: He just asked him whether he did or didn't. He can answer that question." Tr. 474.

{¶44} In closing argument, the prosecutor stated, "They would have you ignore the fact that he lied about his knowledge and whereabouts when he was interviewed by

Detective Hill days later. They would have you ignore the fact that he didn't testify at the preliminary hearing where he could have told the story that he unloaded here today." Tr. 528.

{¶45} The prosecutor's questions and comments were not intended to imply that appellant's silence was evidence of guilt. Appellant chose to talk to police and waive his right to remain silent, telling police he was not in Zanesville at the time of the shooting. At trial he admitted he lied to police and told a different story about the shooting. The prosecutor's comments were directed to the fact that appellant had several opportunities prior to trial to admit he lied to police when he said he wasn't in Zanesville, yet he did not claim the shooting was an accident until the day of trial.

{¶46} Finally, appellant argues that the prosecution improperly insinuated during closing that appellant failed to call a missing witness because that witness would not have been helpful to appellant.

{¶47} The test regarding prosecutorial misconduct is whether the prosecutor's remarks were improper, and, if so, whether they prejudicially affected substantial rights of the defendant. *State v. Smith*, 87 Ohio St.3d 424, 442, 721 N.E.2d 93 (2000). In reviewing the propriety of a prosecutor's closing argument, we review the argument in its entirety to determine if the prosecutor's remarks were prejudicial. *State v. Keenan*, 66 Ohio St.3d 402, 410,613 N.E.2d 203 (1993). The touchstone of the analysis is the fairness of the trial, not the culpability of the prosecutor. *Smith, supra,* at 442, citing *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940 (1982).

{¶48} In commenting that T did not testify at trial, the prosecutor stated:

{¶49}   "Those are the witnesses that were on the scene, the only witnesses. You've heard that T has flown the coop.   Nobody knows where T is.   I'm sure if the defendant knew where he was and if he thought T would help him out, he would have had him here."   Tr. 496.   Appellant objected, and the court overruled the objection, ruling that the prosecutor was permitted to make inferences.   Tr. 497.

{¶50}   The prosecutor's comments do not rise to the level of misconduct.   Just prior to the comment, the prosecutor argued that all of the witnesses who were in the house at the time of the shooting testified on behalf of the State.   While the prosecutor was speculating as to appellant's ability to find and present T's testimony on his behalf, the comment was isolated and did not deny appellant a fair trial.

{¶51}   The third assignment of error is overruled.

IV.

{¶52}   Appellant argues that the court erred in giving his requested instruction to the jury on self-defense, and failing to give instructions on the defenses of accident and necessity, which he did not request.

{¶53}   In reviewing a claim on appeal that a jury instruction requested by the defendant and given by the trial court was reversible error, under the "invited error doctrine," a party may not request a jury instruction and then later complain on appeal that requested instruction was given.   *Walker v. State,* 5th Dist. Stark No. 2007CA00037, 2007-Ohio-5262, ¶51.   Appellant invited any error in the court instructing the jury on self-defense by requesting said instruction.

{¶54}   Appellant next argues that the court erred in failing to instruct the jury on accident and necessity.   Appellant did not request such instructions.   We therefore must

find plain error to reverse. To prevail under a plain error analysis, appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978). Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.* at paragraph three of the syllabus.

{¶55} In general, a trial court errs by failing to provide a jury instruction on the defense of accident when the facts of a case warrant such an instruction. *State v. Smiley,* 8th Dist. Cuyahoga App. No. 03853, 2010–Ohio–4349, ¶ 16. However, if trial court's general charge was otherwise correct, it is doubtful that failing to give an instruction on accident would ever satisfy the tests for plain error or ineffective assistance of counsel because the defense of accident is not an excuse or justification for the admitted act. *Id.* The effect of an accident instruction is to simply remind the jury that the defendant presented evidence to negate the requisite mental element. *Id.* If the jury believed the defendant's evidence regarding accident, it would have been required to find the defendant not guilty regardless of the lack of an accident instruction. *Id.*

{¶56} To convict appellant of felonious assault, the jury had to find that appellant knowingly caused or attempted to cause physical harm to Minor by means of a deadly weapon or dangerous ordnance. If the jury believed appellant's testimony that Minor pulled the gun on him and he was trying to protect himself by grabbing the gun from Minor when it accidentally fired, they would have acquitted appellant of felonious assault. Appellant has not demonstrated plain error in the failure to sua sponte instruct the jury on accident.

{¶57}   Appellant also argues that the court should have instructed the jury on the defense of necessity to having a weapon under disability, as he had to possess the gun to save his own life.  Appellant has not demonstrated plain error.  The jury did not find that appellant acted in self-defense, nor did they believe his testimony that the gun went off accidentally or they would not have found the requisite mental state for the felonious assault conviction.  Therefore, even if instructed on necessity, the jury would not have found that appellant handled the firearm out of necessity to save his own life.

{¶58}   The fourth assignment of error is overruled.

V.

{¶59}   Appellant next argues that counsel was ineffective for failing to object to reverse inference DNA evidence (assignment of error one), failing to object to the prosecutor's improper comments on appellant's failure to testify at the preliminary hearing (assignment of error three), failing to request instructions on accident and necessity rather than self-defense (assignment of error four), and failing to proffer the tape-recorded call where Minor made the exculpatory statement, in the event we find in the second assignment of error that appellant waived error by proffering the substance of the statement rather than the actual tape.

{¶60}   A properly licensed attorney is presumed competent. *State v. Hamblin*, 37 Ohio St.3d 153, 524 N.E.2d 476 (1988). Therefore, in order to prevail on a claim of ineffective assistance of counsel, appellant must show counsel's performance fell below an objective standard of reasonable representation and but for counsel's error, the result of the proceedings would have been different.   *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984); *State v. Bradley* , 42 Ohio St.3d 136,

538 N.E.2d 373 (1989). In other words, appellant must show that counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Id.*

{¶61} As to appellant's first three claims of ineffective assistance of counsel, appellant has not demonstrated that the outcome of the trial would have been different for the reasons stated in assignments of error one, three, and four. As to his claim that counsel should have proffered the tape recorded statement, we did not find in the second assignment of error that he waived error by proffering the substance of the statement rather than the tape, and this claim is therefore moot.

{¶62} The fifth assignment of error is overruled.

VI.

{¶63} In his sixth assignment of error, appellant argues that the court erred in sentencing him to five years incarceration for a felony three conviction of having a weapon under a disability, as the maximum term is 36 months pursuant to R.C. 2929.14(A)(3)(a) and (b). The State concedes this error. R.C. 2929.14(A)(3)(a) provides for a maximum term of five years incarceration for certain convictions of third degree felonies; however, a conviction of 2923.13 is not among these offenses. Accordingly, the maximum sentence to which appellant could be sentenced for violating R.C. 2923.13 was 36 months pursuant to R.C. 2929.14(A)(3)(b).

{¶64} The sixth assignment of error is sustained.

VII.

{¶65} In his final assignment of error, appellant argues that he was prejudiced by cumulative error, as set forth in his preceding assignments of error.

{¶66}    Although violations of the Rules of Evidence during trial may singularly not rise to the level of prejudicial error, a conviction will be reversed where the cumulative effect of the errors deprived the defendant of the constitutional right to a fair trial. *State v. DeMarco,* 31 Ohio St.3d 191, 509 N.E.2d 1256 (1987), ¶ 2 of the syllabus. The *DeMarco* case involved numerous violations of the hearsay rule, which the Supreme Court found cumulatively resulted in prejudicial error. *Id.* at 196–197, 509 N.E.2d 1256. However, the doctrine is not applicable to cases where the court has not found multiple instances of harmless error. *State v. Garner,* 74 Ohio St.3d 49, 64, 656 N.E.2d 623, 1995–Ohio–168.

{¶67}    In the instant case, we have not found multiple instances of harmless error. The doctrine of cumulative error therefore does not apply.

{¶68} The seventh assignment of error is overruled. The judgment of the Muskingum County Common Pleas Court is reversed solely as to the sentence of five years incarceration for the conviction of R.C. 2923.13(A)(3). The judgment is affirmed in all other respects, and this cause is remanded for resentencing. Costs are to be split evenly between the parties.

By: Baldwin, J.

Gwin, P. J. and

Farmer, J. concur.

_____
HON. CRAIG R. BALDWIN

_____
HON. W. SCOTT GWIN

_____
HON. SHEILA G. FARMER

CRB/rad

[Cite as *State v. Brown*, 2013-Ohio-3608.]

IN THE COURT OF APPEALS FOR MUSKINGUM COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff - Appellee | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| RARECOLE L.E. BROWN | : | |
| | : | |
| Defendant - Appellant | : | CASE NO. CT2013-0004 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Muskingum County, Ohio is affirmed in part, reversed in part and remanded. Costs are to be split between the parties.

_____
HON. CRAIG R. BALDWIN


_____
HON. W. SCOTT GWIN


_____
HON. SHEILA G. FARMER